IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

NATIONAL SURETY
CORPORATION,

        Plaintiff,

vs.

DUSTEX CORPORATION and
MIRON CONSTRUCTION CO.,
INC.,

        Defendants.

No. C13-2004

REPORT AND RECOMMENDATION

---

## TABLE OF CONTENTS

I.    *INTRODUCTION* ........................................ 2

II.   *PROCEDURAL HISTORY* ............................... 2

III.  *RELEVANT FACTS* ..................................... 4
    A.   *Construction Project* .............................. 4
    B.   *Demand for Arbitration* ........................... 5
    C.   *State Court Declaratory Judgment Action* .......... 5
    D.   *Initial Representation* ............................ 7
    E.   *Formal Reservation of Rights* ..................... 9
    F.   *Defense of Arbitration* ........................... 11
    G.   *Supplemental Reservation of Rights* .............. 13
    H.   *Arbitration Decision* ............................ 15

IV.  *DISCUSSION* ........................................ 15
    A.   *Choice of Law* ................................... 16
    B.   *Law Regarding Estoppel* .......................... 18
        1.   *Reservation of Rights* ...................... 19
        2.   *Justifiable Reliance* ....................... 24
        3.   *Prejudice* .................................. 26

V.    *SUMMARY* .......................................... 29

VI.   *RECOMMENDATION* ................................. 30

## I. INTRODUCTION

On the 20th day of January 2015, this matter came on for hearing pursuant to the Court's Order of September 24, 2014. Judge Edward J. McManus referred this matter to a magistrate judge, pursuant to 28 U.S.C. § 636(b), "to conduct an evidentiary hearing on defendants' affirmative defense of equitable estoppel and file an R&R." *See* Order (docket number 151). Plaintiff National Surety Corporation ("NSC") was represented by its attorneys, Todd S. Schenk and James R. Murray. Defendant Dustex Corporation ("Dustex") was represented by its attorneys, Christopher P. Jannes and Elizabeth R. Meyer. Defendant Miron Construction Co., Inc. ("Miron") did not appear, pursuant to a stipulation that it would "not be directly participating in the estoppel evidentiary hearing because the issue of Miron's entitled [*sic*] to coverage is not an issue to be presented at the evidentiary hearing." *See* Proposed Stipulation (docket number 158) at 2, ¶ 5.

At the Court's direction, Dustex filed a post-hearing brief and argument (docket number 192) on February 4, 2015, NSC filed a response (docket number 196) on February 18, and Dustex filed a reply (docket number 197) on February 25.

## II. PROCEDURAL HISTORY

On January 14, 2013, NSC initiated this action by filing a complaint seeking declaratory judgment. NSC asked the Court to declare that it had no duty to defend or indemnify Dustex and Miron in an arbitration action which was then pending before the American Arbitration Association ("AAA"). Dustex and Miron filed answers on March 21, 2013.[1] In its answer, Dustex asserted, among other things, that NSC failed to effectively give Dustex notice that NSC was defending the arbitration action under a

---

[1] Also named as a defendant in the complaint was the Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa ("CFU"). CFU also filed an answer on March 21, 2013, but it was subsequently dismissed as a defendant in this action. *See* docket number 155.

reservation of rights. Accordingly, Dustex argues that NSC is estopped from denying coverage.

On January 21, 2014, NSC filed separate motions for summary judgment against Dustex and Miron. NSC asked the Court to declare, as a matter of law, that there was no coverage under the policy and it owed no duty to defend and/or indemnify Dustex or Miron. Dustex and Miron filed a joint motion for summary judgment on the same date, claiming "NSC did not timely and unambiguously reserve its rights under the policies."[2] Defendants argued that "[b]y its actions or inactions, NSC is estopped from asserting the absence of insurance coverage in this action."[3] Also on January 21, Miron filed a motion for partial summary judgment, asking that it be declared an additional insured under Dustex's policy with NSC.

On May 9, 2014, the Court ruled on the four motions for summary judgment. Judge McManus concluded that the insurance policy issued by NSC to Dustex did not require NSC to defend or indemnify Dustex in the underlying arbitration action. Because the Court found that there was no coverage under the policy, it further concluded that Miron's claim to be an additional insured under the policy could be denied as moot.[4] Regarding the affirmative defense of estoppel, the Court concluded that there were

---

[2] Joint Motion for Summary Judgment (docket number 75) at 1, ¶ 3.

[3] *Id.* at 2, ¶ 4.

[4] In his order, Judge McManus wrote that Miron's claim as an additional insured "is denied as currently moot, without prejudice to re-file if the situation changes in that regard." *See* Order (docket number 142) at 11. It is my understanding that Judge McManus was referring to Dustex's and Miron's claim of estoppel. That is, if NSC is estopped from denying coverage due to an ineffective reservation of rights, then Miron may renew its claim that it is an additional insured under the policy.

"complex disputed questions of material fact on which summary judgment cannot be granted." *See* Order (docket number 142) at 12.

Following the Court's ruling on the motions for summary judgment, the only issue remaining to be tried was Defendants' equitable affirmative defense of estoppel.[5] After briefing by the parties, Judge McManus concluded that there is no right to a jury trial on this equitable affirmative defense.[6] He then referred the matter to a magistrate judge to conduct an evidentiary hearing on the affirmative defense.

### III. RELEVANT FACTS

#### A. Construction Project

In 2006, the Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa — more commonly referred to as Cedar Falls Utilities ("CFU") — wanted to make an environmental upgrade to its Streeter Station Unit No. 6. On August 10, 2006, CFU and Miron executed an Agreement (Exhibit 2) for construction of the upgrade. The $3.35 million project included the installation of a "baghouse" to collect emissions from the coal-fired boiler. On February 7, 2007, Miron and Dustex executed a Purchase Agreement (Exhibit 3), requiring Dustex to fabricate the baghouse equipment for $1.83 million.

Dean Baston, Miron's chief financial officer, testified that while the project was substantially complete by the end of 2007, CFU would not sign a certificate of substantial completion. In addition to standard "punch list" items, CFU raised concerns regarding the performance of the baghouse. Dustex, Miron, and CFU met in 2008 in an attempt to resolve the dispute, although CFU's focus was apparently diverted following massive

---

[5] *See* Order (docket number 147).

[6] *See* Order (docket number 151).

flooding in June 2008, and the plant was not operating for a substantial period of time. The parties continued to negotiate in 2009, but were unable to reach an agreement.

## B. Demand for Arbitration

On August 18, 2009, Miron filed an arbitration demand against CFU with the AAA, seeking $475,000 for money allegedly due on the contract. CFU filed an answer on September 2, 2009, claiming damages against Miron for breach of contract in the amount of $1,461,000. On January 11, 2010, CFU and Miron submitted a "tolling agreement" to Dustex, which would extend certain deadlines. Dustex, who was not a party to the arbitration action at that time, declined to execute the tolling agreement.

On November 18, 2010, CFU filed a motion in the arbitration action, asking that Dustex be ordered to participate as a party. Attorney William L. Sitton, Jr., acting as Dustex's attorney, responded to the motion on November 24, 2010. Apparently, the motion was never ruled on by the arbitrator. On December 2, 2010, however, CFU filed an action in the Iowa District Court for Black Hawk County, seeking an order compelling Dustex to participate in the arbitration action. Dustex was served with the petition on about December 13, 2010.

## C. State Court Declaratory Judgment Action

On December 15, Sitton wrote to Dustex's insurance agent, with the subject line: "Miron Construction Company, Inc. Purchase Agreement."[7] The letter states that "[t]wo arbitration claims have been filed against Dustex in Cedar Falls, Iowa." At the time of hearing, Sitton acknowledged that was a misstatement. Actually, there was a declaratory judgment action pending against Dustex in state district court, and a motion had been filed to bring Dustex into the arbitration between Miron and CFU. Sitton's letter then described the "long history" of the dispute between CFU and Miron, and identified perceived issues.

---

[7] Exhibit 7.

Attached to the letter were copies of various documents, including some related to the underlying arbitration action.[8]

Upon receipt of Sitton's letter, Dustex's insurance agent forwarded the information to the Fireman's Fund Insurance Company.[9] Brian McCoy, an adjuster with Fireman's Fund, opened a file on December 17, 2010. On December 22, McCoy called Sitton and acknowledged receipt of the claim. According to his file note, McCoy advised Sitton that the arbitration appeared to be based on breach of contract and he questioned whether there was coverage under the policy. Sitton responded that there was more to the claim than adherence to a contract.[10]

Earlier on December 22, Sitton sent an email to Miron's and CFU's attorneys, advising them he had not heard back from Dustex's insurer, and requesting a 20-day extension of the deadline to respond to the state court action.[11] CFU's attorney replied the following day, denying the requested extension. Sitton then sent an email to McCoy, Fireman's Fund's adjuster, advising him that CFU was unwilling to agree to an extension, and reminding him that a response to the declaratory judgment action was due not later than January 3.[12]

---

[8] Exhibit 1024.

[9] NSC is a wholly owned subsidiary of Fireman's Fund. While the policy was apparently issued by NSC, the claims were adjusted by Fireman's Fund. The documents and testimony refer almost exclusively to Fireman's Fund, and in this Report and Recommendation I will refer to NSC and Fireman's Fund interchangeably.

[10] Exhibit 1 at 25.

[11] Exhibit 1026.

[12] Exhibit 1028.

Also on December 22, 2010, Sitton sent an email to Patrick Paul, Dustex's CEO, indicating that he had "[b]een going back and forth with claims rep from Fireman's Fund as to whether this is a covered occurrence. $64,000 question."[13] Sitton advised Paul that he had been sending Fireman's Fund "communications from Miron/CFU that raise issues affecting property damage and advertising injury."

## D. *Initial Representation*

In a file note dated December 23, McCoy wrote that he had reviewed the complaint in the arbitration action and it was based on a "fabric filter provided by Dustex and installed by Miron."[14] The note also states that "[t]here appears to be no coverage for this matter." In a December 27 note, however, McCoy wrote that he "[t]ook another look at policy" and it "[a]ppears that claimant CFU may be alleging property damage."[15] In a file note dated December 29, Jeanne Meyers (apparently another Fireman's Fund employee) opined that Dustex was owed a defense under a reservation of rights.

> I have reviewed all of the notes and the policy provisions as well as the arbitration proceeding. I feel that we owe the insured a defense under a reservation of rights. The Arbitration Proceeding is a claim against the insd. and as such we owe the defense. There is also allegation of Property damage incurred by the Plaintiff, contained within the Arbitration Filing.

Claim History (Exhibit 1) at 24.

Apparently, Fireman's Fund routinely retains the Duncan Green law firm in Des Moines to represent its insured's interests. On December 30, Duncan Green advised Brian McCoy that attorney Brad Obermeier would be handling the matter. McCoy then sent an

---

[13] Exhibit 1027.

[14] Exhibit 1 at 24.

[15] *Id.*

email to Dustex, with a copy to Sitton, confirming an earlier voicemail and stating that attorney Brad Obermeier "will be defending Dustex's interests in this matter."[16] The subject line on the email was the caption in the state court declaratory judgment action.

Sitton responded on January 3, 2011, asking about Obermeier's qualifications.[17] Sitton expressed concern that "the attorney selected by FF to defend this breach of contract action does not appear to be experienced in 1) Construction litigation, or 2) AAA arbitration under the Construction Rules."[18] At the hearing, Sitton explained that while the pending action was a declaratory judgment action, it involved an interpretation of a construction contract and, therefore, he believed a construction attorney was required.

The case was almost immediately reassigned to Martin Kenworthy, another lawyer at the Duncan Green law firm. Apparently, Kenworthy sent an email to Sitton indicating his involvement in the case. Sitton responded with an email on January 3, asking about Kenworthy's qualifications.[19] Among other things, Sitton asked Kenworthy about his experience with AAA construction arbitration claims and "assured" Kenworthy that "an adequate defense demands" an attorney who is active in construction litigation, AAA arbitrations, and selecting construction arbitrators.[20] Kenworthy has an undergraduate degree in construction engineering and worked for nine years in the field before returning to law school. It is undisputed that he is highly qualified and experienced in construction litigation.

---

[16] Exhibit 1031.

[17] *Id.*

[18] Exhibit 9 at 1.

[19] Exhibit 1032 at 2.

[20] *Id.*

On January 6, 2011, Sitton wrote to Patrick Paul at Dustex to give a "status report" regarding the declaratory judgment action and the arbitration proceeding. The letter states that the "defense torch" was passed to Martin Kenworthy, and Sitton states that "I am satisfied that he can protect your interests in both pending matters."[21] The remainder of the letter is devoted to the defense of the arbitration action.

On January 10, 2011, Sitton wrote to CFU's attorney and informed him that "Dustex's carrier has retained counsel on behalf of Dustex to represent it in the declaratory judgment action and the arbitration claim filed by Miron."[22] Sitton also states that "I typically appear for Dustex in arbitration claims, and will be doing so here." Kenworthy testified that he regularly discussed the arbitration action with Sitton and Sitton provided input in defense of the arbitration action, but Sitton did not formally appear until shortly before the arbitration hearing

### E.  *Formal Reservation of Rights*

On March 17, 2011, Brian McCoy and Scott Byrne of Fireman's Fund sent a reservation of rights letter to Dustex.[23] This was the first written indication to Dustex that Fireman's Fund was defending under a reservation of rights. The first sentence of the letter refers to the declaratory judgment action pending in state court. Inexplicably, the second sentence states: "For reasons set forth below, Fireman's Fund Insurance Company will be unable to defend or indemnify you in this matter."[24] At that time, however, Fireman's Fund *was* providing a defense in the state court action and, because it was

---

[21] Exhibit 10 at 1.

[22] Exhibit 1035.

[23] Exhibit 11.

[24] Exhibit 11 at 1.

simply for declaratory judgment, there was no need to *indemnify* Dustex. At the instant hearing, McCoy admitted that the second sentence was "a mistake" and should not have been included in the letter. The letter then describes the allegations contained in the petition, which, in turn, described the allegations in the arbitration action.

The second paragraph of the March 17 reservation of rights letter states that "[a]t this time, we do not have sufficient information to make a decision as to whether or not a claim arising out of this incident" is covered by the policy. The next sentence states: "We sill [*sic*] gather this information as soon as possible and advise you promptly of our decision."[25] Dustex is then advised that "our investigation of this matter is being conducted under a full reservation of rights available under the policy and the law."[26] The next seven pages of the letter set out various policy provisions, and the letter concludes by inviting Dustex to contact McCoy if it has "any questions or which [*sic*] to discuss this matter."[27]

Patrick Paul, Dustex's CEO, testified that after he received the March 17, 2011 reservation of rights letter, he was confused about the apparent inconsistency regarding whether Fireman's Fund would defend or not defend. Paul noted that the March 17 letter indicated Fireman's Fund would "gather this information as soon as possible and advise you promptly of our decision." He and Sitton decided that Dustex would "sit tight" and see what specific claims would be made by CFU, and what Fireman's Fund's position would be regarding defending and indemnification. Neither Paul nor Sitton contacted McCoy then or later to clarify whether the arbitration action was being defended under a reservation of rights.

---

[25] *Id.* at 2.

[26] *Id.*

[27] *Id.* at 9.

## F. Defense of Arbitration

On April 29, 2011, the state court ordered Dustex to participate in the arbitration action pending between Miron and CFU.[28] Both Sitton and Kenworthy testified they expected that result based on Iowa precedent. Kenworthy then continued his representation of Dustex in the arbitration action. Sitton described the continued representation as "seamless." Regarding his continued representation, Kenworthy testified he "didn't give it a lot of thought," and it did not occur to him that his representation would stop after the declaratory judgment action and he would have to be retained separately for the arbitration action.

On June 3, 2011, CFU filed an amended statement of claims in the arbitration action, claiming breach of contract, breach of warranty, and professional negligence.[29] CFU claimed "$1.335 million for reasonable and necessary cost of repair of the defects, which does not include a claim for the bottom-entry baghouse design, plus liquidated damages for delay in the completion of the Project in the amount of $210,000 for a total claim amount of $1.545 million."[30] CFU filed a second amended statement of claims in May 2012.[31] Now, CFU was claiming damages "in excess of $2,000,000" to demolish the baghouse and install a new baghouse, plus over $1 million in lost revenue, plus liquidated damages in the amount of $570,000.[32] In December 2012 — approximately one

---

[28] Exhibit 25.

[29] Exhibit 12.

[30] *Id.* at 5, ¶ 15.

[31] Exhibit 13.

[32] *Id.* at 5, ¶ 18.

month prior to the arbitration hearing — CFU filed a third amended statement of claims.[33] CFU's claimed damages had skyrocketed to "an amount in excess of $6,500,000," plus more than $1 million in lost revenue, and $576,000 for liquidated damages.[34]

According to notes in its claims file, in early November 2012, Fireman's Fund discussed internally the filing of a declaratory judgment action to determine its obligations under the policy. Approval to proceed with a declaratory judgment action was given on November 20, 2012.[35] NSC filed the instant complaint for declaratory judgment on January 14, 2013 — just one week prior to the beginning of the arbitration hearing.

On December 20, 2012, Sitton sent Kenworthy an email, stating that he would like to participate in preparing Patrick Paul (Dustex's CEO) and Brian Kalata (Dustex's Vice-President of Engineering) for their upcoming depositions. In an email to Dustex on December 28, 2012, Sitton said this was done to "verify" whether the reservation of rights was limited to the declaratory judgment action and did not apply to the arbitration. The email stated, in part:

> **Don't forward this email to any other individual. Reply only to me. Two more points.** First, Fireman's Fund is "locked in" in my opinion, to not only defending this arbitration claim but in paying any award that could or might be entered against Dustex, up to the limit of the policies. Although you received the customary "reservation of rights" letter, FF has done nothing since then to put you on notice that the coverage does not apply. I recently did something to verify the truthfulness of that statement. I asked Kenworthy if I could participate in 1 or 2 depositions and conduct your examination and McKenna's examination at arbitration. If FF

---

[33] Exhibit 14.

[34] *Id.* at 6, ¶ 18.

[35] Exhibit 1 at 13.

> believed they had an "out" as to coverage, I would have
> immediately been told: "Sure. No problem. Do as much as
> you want." Instead, Marty forwarded the request. There still
> has not been an answer. FF will continue to pay Marty, the
> experts and AAA, through the conclusion of this matter. If an
> award is entered against Dustex, FF will pay it.

Email from William Sitton to Patrick Paul dated December 28, 2012 (Exhibit 15).

In anticipation of a mediation meeting, CFU's attorney sent an email to Miron's attorney and Kenworthy on December 28, 2012, attaching a spreadsheet itemizing CFU's demand.[36] The total amount demanded was in excess of $7 million. Kenworthy forwarded the demand to Dustex and Sitton. Despite the extravagant demand, Dustex agreed to go forward with the mediation. The mediation was held on January 2. CFU would not reduce its cash demand below $6.9 million, although the mediator opined that it might come down to $2.5 or $3 million if Defendants "were in the $1 mil range."[37] Dustex offered equipment to effect repairs, valued at approximately $172,000, and Fireman's Fund offered $30,000 in cash. McCoy was uncertain of Miron's position, but observed that "Miron seems to be hung up on a $400,000 cash receivable that they feel plaintiff owes them."[38] After the mediation was concluded, the mediator contacted all three parties and apparently suggested a $3 million settlement, with Miron and Dustex each paying half. That suggestion was apparently not acceptable to any of the parties.

## G. *Supplemental Reservation of Rights*

On January 8, 2013, there were internal emails at Fireman's Fund discussing the filing of a declaratory judgment action and its reservation of rights. Apparently, Miron's

---

[36] Exhibit 1080.

[37] Exhibit 1 at 9.

[38] *Id.*

attorney had solicited a declaratory judgment action to determine if Miron was an additional insured under the policy. Miron's attorney also believed that the arbitration action may be stayed pending a resolution of a declaratory judgment action. In an internal email dated January 8, Brian McCoy was instructed to call Sitton and remind him of the reservation of rights, which would be supplemented by another letter, and "pointing out that if insd loses at Arb, there is no coverage for the damages as they're all excluded by the business risk exclusions."[39] The email goes on to state that if Dustex accepts Fireman's Fund's position, then a declaratory judgment action would not be required. The email notes that "[i]t will all be moot if Dustex prevails in the Arb."[40]

On January 9, 2013, McCoy spoke with Sitton on the phone and advised him that Fireman's Fund would be issuing a supplemental reservation of rights letter. McCoy told Sitton that it did not appear that any of the damages pursued by CFU were covered by the policy. Sitton told McCoy that "the cow has left the barn on that issue."[41] Fireman's Fund then sent Dustex what it described as "a supplement to our letter of March 17, 2011."[42] The subject line on the letter is the caption in the arbitration action. The letter states that Fireman's Fund is "issuing this supplemental reservation of rights with respect to the Second Amended Statement of Claims filed on May 15, 2012."[43] By that time, however, the second amended claim had been superseded by a third amended statement of claims. After realizing its error, Fireman's Fund sent another reservation of rights

---

[39] Exhibit 17 at 4.

[40] *Id.*

[41] *Id.* at 8.

[42] Exhibit 19.

[43] *Id.* at 1.

letter on January 11, 2013, referring to the third amended statement of claims.[44] This declaratory judgment action was filed three days later, on January 14, 2013.

## H. Arbitration Decision

The arbitration hearing began on January 21, 2013. Although the record is somewhat imprecise, the hearing was apparently suspended after a period of time and reconvened a few months later. According to the arbitration award, the arbitrators conducted 12 days of hearings. After giving Miron credit for approximately $421,000 still owed on the contract, the arbitrators found that CFU was entitled to judgment against Miron for approximately $3.3 million. In addition, the arbitrators found that judgment should enter against Dustex in the amount of $3.4 million.[45]

Both Sitton and Paul testified that they believed a settlement could have been reached if they had been actively involved early in the litigation. That is, Dustex claims that if it had been told that Fireman's Fund was defending the arbitration action under a reservation of rights, then Dustex would have actively pursued a settlement early on. Sitton and Paul believe that a settlement may have been possible prior to CFU obtaining a new expert witness in the summer of 2012. At that time, CFU's "tone" changed and it was no longer willing to discuss a reasonable settlement. Dean Baston, Chief Financial Officer at Miron, testified that the parties met early on in an attempt to resolve the problems, but CFU never adopted a position which Miron believed was reasonable.

## IV. DISCUSSION

NSC brought this action seeking a judicial determination of whether it had a duty to defend or indemnify Dustex and Miron in the arbitration action with CFU. In granting NSC's motions for summary judgment, Judge McManus concluded that NSC's policy did

---

[44] Exhibit 21.

[45] *See* Exhibit 23.

not provide any coverage for CFU's claim for damages. Dustex asserts, however, that NSC is estopped from denying coverage because it failed to give Dustex timely and adequate notice that it was defending under a reservation of rights. Judge McManus concluded that Dustex's estoppel claim could not be decided without an evidentiary record. It is that issue which is now before the Court.

## A. Choice of Law

Preliminarily, the Court must determine whether Iowa law or Georgia law applies to this dispute. Federal jurisdiction is established in this case by diversity of citizenship.[46] *See* 28 U.S.C. § 1332. "Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (citing *Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, to determine what *substantive* law applies here, the Court must apply Iowa's choice-of-law rules.

In ruling on the motions for summary judgment, Judge McManus concluded that Iowa choice-of-law rules require the application of Iowa substantive law, citing *Gabe's Const. Co., Inc. v. United Capital Ins. Co.*, 539 N.W.2d 144 (Iowa 1995). There, the Iowa Supreme Court found that "[i]n the absence of a choice-of-law clause in the policy, the rights of the parties are determined by the law of the state which 'has the most significant relationship to the transaction and the parties.'" *Id.* at 146. Moreover, the court cited with approval the Restatement pertaining specifically to contracts of insurance.

> The validity of a contract of fire, surety or casualty insurance
> and the rights created thereby are determined by the local law
> of the state which the parties understood was to be the

---

[46] NSC is an Illinois corporation with its principal place of business in Chicago, Illinois. Dustex is a Georgia corporation with its principal place of business in Kennesaw, Georgia. Miron is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin.

principal location of the insured risk during the term of the
policy, unless with respect to the particular issue, some other
state has a more significant relationship. . . .

*Id.* at 146-47 (quoting The Restatement (Second) of Conflict of Laws § 193 (1971)). Here,
the "principal location of the insured risk" was in Iowa. Judge McManus concluded that
"Iowa's involvement greatly outweighs any interest of any other state, therefore Iowa law
applies." *See* Order (docket number 142) at 5.

While conceding that the Court has already determined that Iowa law applies to the
coverage question, Dustex nonetheless argues that "on the single issue of estoppel, this
Court is required to apply the law of Georgia."[47] In support of its argument, Dustex cites
*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750 (11th Cir. 1998).
In that case, Federated filed a declaratory judgment action in a federal court in South
Carolina. Boardman, the insured, responded by filing an action for breach of contract and
declaratory relief in a Georgia federal court. The South Carolina court transferred
Federated's case to the Georgia court, and the Georgia court subsequently consolidated the
cases. *Id.* at 752.

The issue presented on appeal was which state's law should apply to the
consolidated cases. Georgia law provides that when insurance contracts are made in
Georgia, the parties are presumed to have intended their contract be governed by Georgia
law. *Id.* at 752. Because the property at issue was located in South Carolina, however,
the South Carolina statute mandated that South Carolina law applied. *Id.* at 753. The
Court noted that "[f]ederal courts sitting in diversity apply the forum state's choice-of-law
rules," and further noted that when a case is transferred from one forum to another, "the
transferor court's choice-of-law rules apply to the transferred case even after the transfer
occurs." *Id.* at 752.

---

[47] Dustex's Post-Hearing Argument (docket number 192) at 17.

In resolving this apparent impasse, the Eleventh Circuit held that "the 'balancing of interests' analysis is the appropriate way to determine which state's law applies *in consolidated cases such as these* where of necessity only one state's law may be applied." *Id.* (emphasis added) The instant action is easily distinguished from the circumstances faced by the Court in *Boardman*. Because Federated's case was brought in South Carolina, South Carolina's choice-of-law rules applied — even after the case was transferred to Georgia. The Eleventh Circuit was faced with the problem of having to choose between two competing — and equally valid — choice-of-law rules. Here, the case was brought in Iowa, and only Iowa's choice-of-law rule applies. For the reasons previously stated by Judge McManus, the Iowa choice-of-law rules require the application of Iowa substantive law.

### B. Law Regarding Estoppel

Generally, coverage under an insurance policy cannot be established by estoppel when the loss is not otherwise covered by the contract of insurance. *Westfield Ins. Companies v. Economy Fire & Cas. Co.*, 623 N.W.2d 871, 879 (Iowa 2001) ("the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all") (quoting *Pierce v. Homesteaders Life Ass'n*, 223 Iowa 211, 217, 272 NW 543, 546 (1937)). *See also City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052, 1059 (8th Cir. 1979) ("Iowa follows the general rule that the doctrine of estoppel may not be used 'to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom.'") (quoting *Randolph v. Fireman's Fund Ins. Co.*, 255 Iowa 943, 124 N.W.2d 528, 531-32 (1963)).

There is, however, a well-recognized exception to this rule: "When an insurance company assumes the defense of an action, with knowledge actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." *Westfield*, 623 N.W.2d at 879 (quoting *City of*

*Carter Lake*, 604 F.2d at 1059). To estop an insurer from raising the defense of non-coverage, the insured must show "prejudice and injury." *Id.* at 880.

> The exception to the general rule that coverage cannot be established by waiver or estoppel is limited to equitable estoppel. Justifiable reliance and prejudice must be shown to estop an insurer from denying coverage.

*Westfield*, 623 N.W.2d at 880. Accordingly, Dustex has the burden in this case of showing (1) NSC failed to provide adequate and timely notice of its reservation of rights, (2) Dustex justifiably relied on the lack of notice from NSC, and (3) Dustex was prejudiced.

### 1.   *Reservation of Rights*

As noted above, if an insurance company assumes the defense of an action, then it may be estopped from subsequently claiming that there was no coverage afforded under the policy. An insurer may avoid that result, however, by providing its insured with a "reservation of rights."

> Reservation of rights is a means by which prior to determination of the liability of the insured, the insurer seeks to suspend the operation of waiver and estoppel. When coverage is in doubt, the insurer may offer to defend the insured, reserving all of its policy defenses in case the insured is found liable. Upon such notification the insured may either accept the reservation of rights and allow the company to defend or it may reject the reservation of rights and take over the defense itself.

*City of Carter Lake*, 604 F.2d at 1060, n.7. The first fighting issue in this case is whether NSC provided Dustex with timely and adequate notice that it was defending the arbitration action under a reservation of rights.

NSC first received notice of the dispute between CFU, Miron, and Dustex, when Dustex's attorney, William L. Sitton, Jr., wrote to Dustex's insurance agent on December

15, 2010. The letter mistakenly advised the agent that there were "two arbitration claims" filed against Dustex. At that time, a motion had been filed to bring Dustex into the arbitration between Miron and CFU, and Dustex had recently been served with a declaratory judgment action in state court, seeking the same result. Dustex's insurance agent forwarded the information to Fireman's Fund, where it was directed to the attention of Brian McCoy, an adjuster who thereafter handled this claim.

On December 22, 2010, McCoy called Sitton and acknowledged receipt of the claim. According to his file note, McCoy indicated that the damages sought in the petition "do not meet definition of BI, PD, AI or PI." McCoy noted that Sitton "tried to pin me down." McCoy told Sitton that "my position is not yet final" and "advised I would get back to him." Later that day, Sitton sent an email to Patrick Paul, Dustex's CEO, indicating that he had "[b]een going back and forth with claims rep from Fireman's Fund as to whether this is a covered occurrence. $64,000 question." When questioning whether "this" is a "covered occurrence," Sitton would appear to be referring to CFU's claim in the arbitration action.

On December 23, 2010, Sitton followed up with an email to McCoy. Sitton reported that he had requested a 20-day extension to respond to "CFU's complaint for a declaratory judgment that Dustex is liable to CFU in an arbitration proceeding. . . ."[48] (The declaratory judgment action simply sought to force Dustex into the arbitration action. It did not seek a ruling that "Dustex is liable to CFU" in the arbitration action.) Sitton told McCoy that "FF has a duty to defend and a duty to indemnify." (There would be no duty to indemnify in the declaratory judgment action.) While acknowledging the specifics of CFU's claims were unknown, Sitton reported that "CFU is claiming damaged property and consequential damages as a result thereof." (CFU was not claiming monetary damages in

---

[48] Exhibit 1028.

the declaratory judgment action.) It is clear that Sitton is referring to the arbitration action in this email. Sitton asks that NSC retain attorney Kevin Collins to represent Dustex, and states that "[w]e understand that Firemans [*sic*] Fund will do so under a reservation of rights."

On December 27, 2010, McCoy noted in the file that CFU might be claiming property damage, which could trigger an obligation to defend and indemnify. On December 29, another Fireman's Fund employee, Jeanne Meyers, wrote in the file that "I feel that we owe the insured a defense under reservation of rights." The case was then referred to the Duncan Green law firm, and specifically attorney Martin Kenworthy, for attention.

On December 30, 2010, McCoy called Patrick Paul at Dustex and left a voicemail "indicating that case has been referred" to the Duncan Green law firm. McCoy called Sitton and "left the same message." McCoy followed up with an email later that morning, stating that an attorney from Duncan Green "will be defending Dustex interests in this matter." The subject line in the email was the caption in the pending state declaratory judgment action. Sitton responded to McCoy in an email that afternoon, stating "[t]hank you for your email and the decision of Fireman's Fund *to defend this claim under a reservation of rights.*"[49] (emphasis added) Accordingly, it is undisputed that Sitton (and Dustex) knew from the beginning that NSC was defending "this claim" under a reservation of rights. What is less clear is what was meant by "this claim." Dustex asserts that it believed NSC's reservation of rights applied only to the declaratory judgment action, and not to any claim in the arbitration. That is, when referring to "this claim" being defended under a reservation of rights, Dustex asserts Sitton was referring to the state court action only.

---

[49] Exhibit 1031.

On January 6, 2011, Sitton wrote to Patrick Paul, giving Dustex a "status report" regarding the declaratory action pending in the Iowa District Court and the arbitration proceeding pending in Cedar Falls.[50] Sitton reported that attorney Martin Kenworthy had been assigned to the case, and Sitton was satisfied that Kenworthy could protect Dustex's interests "in both pending matters." That is, approximately one week after thanking Fireman's Fund for its decision "to defend this claim under a reservation of rights," Sitton reported to Dustex that Kenworthy had been assigned to "protect your interests in both pending matters." Four days later, on January 10, 2011, Sitton sent an email to CFU's attorney, advising him that "Dustex's carrier has retained counsel on behalf of Dustex to represent it in the declaratory judgment action and the arbitration claim filed by Miron."[51] I believe Dustex understood Kenworthy had been retained to represent Dustex in "both pending matters," and was doing so under a reservation of rights.

NSC did not send a written reservation of rights letter to Dustex until March 17, 2011. The heading on the letter does not identify a specific action, but names CFU as "Plaintiff" and identifies the "date of claim" as "May 11, 2006 and ongoing." The letter begins by acknowledging receipt of the petition in the state declaratory judgment action. It then states — erroneously — that Fireman's Fund "will be unable to defend or indemnify you in this matter." The letter then describes the underlying circumstances and notes that "[t]he claims are now in Arbitration which is the subject of the Petition requesting the Court compel Dustex Corporation to participate in the Arbitration." The letter continues:

> At this time, we do not have sufficient information to make a
> decision as to whether or not a claim arising out of this
> incident is covered by policy number MZX-80919809. We sill
> [sic] gather this information as soon as possible and advise you

---

[50] Exhibit 1034.

[51] Exhibit 1035.

> promptly of our decision. *Meanwhile our investigation of this matter is being conducted under a full reservation of all rights available under the policy and the law.*

Letter from Fireman's Fund to Dustex, dated March 17, 2011 (Exhibit 11) at 2 (emphasis added). While both Patrick Paul and Sitton expressed confusion over NSC's position, they decided not to seek any clarification.

NSC must concede that the March 17, 2011 reservation of rights letter was poorly written. The second sentence — stating that Fireman's Fund would not defend or indemnify Dustex "in this matter" — is a complete non sequitur. It is particularly nonsensical when applied to the declaratory judgment action. That is, NSC was already defending in the declaratory judgment action, and because no claim for monetary damages was being made, there was no reason to indemnify.

Importantly, however, the letter did not stop there. It went on to describe the circumstances underlying the claims made by CFU in the pending arbitration action. After describing the arbitration claim, the letter states that NSC was unable at that time to make a decision regarding whether "a claim arising out of this incident" was covered by the insurance policy. NSC then advised Dustex that it was proceeding "under a full reservation of all rights available under the policy and the law." At the end of the letter, NSC invited Dustex to contact McCoy if it had any questions. Dustex did not contact NSC to ask any questions regarding the reservation of rights letter.

Approximately one month later, on April 29, 2011, the state court ordered Dustex to participate in the arbitration action — a result which was apparently expected by both Kenworthy and Sitton. Kenworthy then continued to represent Dustex in the arbitration action. Kenworthy testified that it did not occur to him that his representation would stop after the declaratory judgment action. Sitton described the continued representation as "seamless." Nonetheless, Dustex now asserts that it believed NSC had decided to defend

23

and indemnify Dustex in the arbitration action, *without* a reservation of rights. I don't believe it.

As set forth in detail above, when discussing "this claim," all of the communications between NSC and Dustex refer to both the declaratory judgment action and the underlying arbitration action. Dustex's attorney acknowledged in a December 30, 2010 email that McCoy had orally told him that "this claim" was being defended under a reservation of rights. In subsequent communications with Dustex's CEO and CFU's attorney, Sitton wrote that Kenworthy had been retained to represent Dustex "in both pending matters." The reservation of rights letter, sent two-and-a-half months later, when read in context, clearly indicates that NSC was proceeding "under a full reservation of all rights." It defies logic to believe that NSC defended the declaratory judgment action — where no monetary damages were being sought — under a reservation of rights, but then "seamlessly" assumed the unconditional defense of the arbitration action, abandoning its reservation of rights.

I believe that the combination of the oral reservation of rights given on December 30, 2010, together with the written reservation of rights letter dated March 17, 2011, provided Dustex with adequate and timely notice that NSC was providing a defense — including in the arbitration action — under a reservation of rights. *Ellsworth-William Co-op. Co. v. United Fire & Cas. Co.*, 478 N.W.2d 77, 79 (Iowa App. 1991) (finding that the letters sent by the insurer "put the insured on notice certain claims may not be covered" and were "not so vague and general as to be misleading or confusing."). Dustex's claim that it believed the reservation of rights applied only to the declaratory judgment action is unpersuasive.

### 2. *Justifiable Reliance*

As set forth above, I believe NSC provided Dustex with adequate and timely notice that it was defending CFU's claims under a reservation of rights. Even *if* NSC failed to

give notice of its reservation of rights, however, Dustex must show that it justifiably relied on NSC's failure to Dustex's detriment. The parties have not cited any Iowa cases regarding what constitutes justifiable reliance for purposes of estoppel.

Cases from other jurisdictions make it clear, however, that a party cannot claim justifiable reliance in an estoppel case if it had the ability to establish the true facts. *See, e.g., Tucker v. American Intern. Group, Inc.*, 2015 WL 403195 at \*17 (D. Conn.) ("It is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.") (quoting *Prudential Prop. & Cas. Ins. Co. v. Anderson*, 101 Conn. App. 438, 447, 922 A.2d 236 (2007)); *Chaudhry v. Provident Life and Acc. Ins. Co.*, 2014 WL 3511529 at \*21 (N.D. Ill.) ("It is well-established that 'a party claiming the benefit of an estoppel cannot shut his eyes to obvious facts and then charge his ignorance to others.'") (quoting *R &B Kapital Dev., LLC v. North Shore Comm'ty. Bank & Tr. Co.*, 358 Ill. App. 3d 912, 922, 832 N.E.2d 246 (Ill. App. Ct. 2005)); *Fitzpatrick v. Fire Ins. Exchange*, 2000 WL 567101 at \*3 (Tex. App.) ("A party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment.").

Here, Dustex claims that NSC should be estopped from denying coverage because it failed to give timely and adequate notice of its reservation of rights. Even *if* NSC failed to give notice of its reservation of rights, however, Dustex must show that it justifiably relied on that lack of notice. It is unable to do so here. At the least, Dustex knew, or should have known, that there was a question regarding whether NSC's reservation of rights applied only to the declaratory judgment action, or also applied to its defense in the arbitration action. Dustex elected to take no action to ascertain the fact in that regard, hoping instead to claim later that it believed NSC was defending the arbitration action without a reservation of rights.

As set forth above, Dustex has the burden to show that it exercised due diligence to ascertain the truth and "not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." *Tucker*, 2015 WL 403195 at *17. Even *if* there was some ambiguity or confusion regarding whether NSC was defending *both* actions under a reservation of rights, Dustex could have easily clarified the issue by simply asking. Dustex cannot "shut its eyes" to the dispute and then later claim that it justifiably relied on the lack of an adequate notice. *Chaudhry*, 2014 WL 3511529 at *21. Because Dustex failed to use "due diligence to ascertain the truth of the matters upon which [Dustex] relies in acting to [its] detriment," it is unable to establish a defense of estoppel. *Fitzpatrick*, 2000 WL 567101 at *3.

### 3.  *Prejudice*

Finally, Dustex claims that it was prejudiced in its defense of this action by NSC's failure to give timely and adequate notice that it was defending the arbitration action under a reservation of rights. As set forth above, I believe NSC did, in fact, give Dustex adequate and timely notice of its reservation of rights. Moreover, even if timely notice was not given, Dustex is unable to rely on its defense of estoppel because it failed to exercise due diligence to resolve the alleged confusion as to whether NSC was defending the arbitration action under a reservation of rights. However, *if* timely and adequate notice of NSC's reservation of rights was not given, and *if* Dustex justifiably relied on NSC's failure to give timely notice, then in order to establish its defense of estoppel, Dustex must still show prejudice. *Westfield*, 623 N.W.2d at 880 ("justifiable reliance and prejudice must be shown to estop an insurer from denying coverage.")

In its post-hearing brief, Dustex claims that it was prejudiced by NSC's lack of notice "in three distinct ways."[52] First, Dustex argues that because NSC assumed the defense in the arbitration action, Dustex was prevented from selecting "an attorney of its own choosing." Second, Dustex asserts that if NSC had given timely notice of its reservation of rights, then Dustex would have "pursued a settlement" when it was initially brought in to the arbitration proceeding. Third, Dustex argues that because NSC was defending the arbitration action at the same time that it was "preparing a defense on the question of coverage," NSC had a conflict of interest.

Following receipt of Dustex's post-hearing brief, NSC filed a motion to strike those portions of Dustex's argument which claimed prejudice on the first and third arguments set forth above. *See* docket number 193. NSC notes that in a pre-hearing Stipulation (docket number 158), which was adopted as an Order of the Court (docket number 159), the parties agreed that evidence regarding prejudice would be limited to Dustex's alleged loss of the ability to settle CFU's claims.

> Dustex agrees that the evidence presented at the hearing regarding Dustex's alleged prejudice will be limited to Dustex's knowledge that National Surety was reserving its rights to deny coverage for the CFU's claims against it, Dustex's alleged intent to settle CFU's claims against it and Dustex's alleged loss of the ability to settle CFU's claims made against it.

Proposed Stipulation (docket number 158) at 5, ¶ 16. In response, Dustex contends that the stipulation and order merely limited *evidence*, not *argument*.

I find it unnecessary to resolve this dispute, because I believe each of Dustex's contentions are without merit. While it is true that NSC selected the attorney who would defend Dustex in the arbitration proceeding, there is no evidence that Dustex was

---

[52] Dustex's Post-Hearing Brief (docket number 192) at 36.

prejudiced by being "prevented" from selecting its own attorney. By all accounts, the attorney selected by NSC (Kenworthy) is a capable and experienced construction law attorney. Dustex did not offer any evidence, or argument for that matter, that Kenworthy failed to competently represent Dustex's interests. While the arbitrators' decision was disappointing, there is no evidence that the surprisingly large award resulted from anything Kenworthy did or failed to do.

Regarding Dustex's second argument, that it would have pursued a settlement earlier if it had known NSC was defending in the arbitration action under a reservation of rights, I find the argument pure speculation and wishful thinking. There is absolutely no evidence to suggest this case would have settled on terms which Miron and Dustex were willing to offer, and which CFU was willing to accept. On December 28, 2010 — during the early stages of this litigation — Dustex's attorney (Sitton) sent a letter to its CEO (Patrick Paul), opining that "[w]e don't need FF to indemnify Dustex because there's not going to be an award entered against Dustex. Unless your lawyer shows up at arbitration after huffing ether all night long."[53] There is no evidence that Dustex ever made a significant offer toward settlement, or demanded that NSC contribute any substantial amount toward settlement. Moreover, the testimony suggested that Miron believed it was entitled to payment on the amount due under the contract and was similarly unwilling to contribute any substantial amount toward a settlement. There is simply no reason to believe that if Dustex had been told that the defense was being provided under a reservation of rights, that a settlement would have been accomplished.

Finally, Dustex offers no authority to support its argument that a conflict of interest exists when an insurer represents an insured in an underlying action, while simultaneously

---

[53] Exhibit 1030.

pursuing a declaratory judgment to resolve the issue of coverage. I find the argument to be without merit.

## V. SUMMARY

The Court has previously determined that the policy of insurance issued by NSC does not afford coverage to the claims asserted by CFU in the arbitration action. Generally, coverage cannot be established by estoppel when the loss is not otherwise covered by the contract of insurance. If the insurer assumes the defense of an action, however, then it may be estopped from subsequently raising the defense of non-coverage. An insurer may avoid that result by providing its insured with a "reservation of rights." Even if notice of reservation of rights is not given, however, justifiable reliance and prejudice must still be shown to estop an insurer from denying coverage.

I believe NSC gave Dustex timely and adequate notice that it was defending this claim under a reservation of rights. When pressing NSC to retain attorney Kevin Collins to represent Dustex, Dustex's attorney wrote that "[w]e understand that Firemans [*sic*] Fund will do so under a reservation of rights." NSC's adjuster subsequently sent an email to Dustex's attorney stating that NSC had retained an attorney who "will be defending Dustex's interests in this matter." Dustex's attorney responded that afternoon, thanking the adjuster for the email "and the decision of Fireman's Fund to defend this claim under a reservation of rights." Dustex's attorney subsequently contacted both his client and counsel for CFU, advising them that Fireman's Fund had retained an attorney to protect Dustex's interests "in both pending matters." Two-and-a-half months later, NSC followed up with a written reservation of rights letter, stating that NSC was proceeding "under a full reservation of all rights."

I believe these various exchanges demonstrate that Dustex knew, or should have known, that NSC was defending in the arbitration action under a reservation of rights. Even *if* an adequate reservation of rights notice was not given, however, Dustex must still

29

show "justifiable reliance and prejudice" to establish its defense of estoppel. Because it took no action to clarify the perceived ambiguity regarding whether NSC was defending under a reservation of rights, Dustex cannot claim justifiable reliance. In any event, Dustex has failed to show that it suffered any prejudice as a result of NSC's alleged failure to give notice of its reservation of rights. Accordingly, I respectfully recommend that the Court find Dustex has failed to prove its defense of estoppel and, therefore, NSC cannot be forced to provide coverage when it did not otherwise exist under the policy.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that the district court find that Dustex has failed to establish its affirmative defense of estoppel. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on January 20-21, 2015.*

DATED this _10th_ day of March, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

30